ams/sel

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 06-40130-01-JAR |
| | ) | |
| GENARO ESPINOZA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER DENYING DEFENDANT'S
## MOTIONS TO SUPPRESS

This matter comes before the Court on defendant Genaro Espinoza's Motion to Suppress

Evidence Seized from Cellular Phone (Doc. 14) and Motion to Suppress Evidence (Doc. 15).

Defendant moves to suppress: (1) evidence obtained during a traffic stop and subsequent search

of the vehicle he was driving on October 21, 2006; and (2) the information retrieved from his

cellular phone that was seized during the search of his vehicle.  The Court held a hearing on

defendant's motions on March 5, 2007.  Having considered the parties' briefs, the evidence

adduced at the hearing, and the oral argument, the Court is prepared to rule.  For the reasons

stated below, defendant's motions are denied.

### I.      Factual Background

On October 21, 2006,  Kansas Highway Patrol Trooper Richard Jimerson was parked  in

the median along Interstate 70 facing west and was talking to Kansas Highway Patrol Trooper

Scott Morris, who was in another patrol car facing east.  At approximately 8:25 a.m., Trooper

Jimerson observed defendant driving eastbound on Interstate 70 in a pickup truck with his head

laying back on the headrest.  Trooper Jimerson feared that defendant might be a "sleepy driver"

and alerted Trooper Morris.[1]

Trooper Morris also observed defendant's vehicle pass him on the highway in the left lane and noticed defendant's left tires pass over the inside shoulder lane near the median. Trooper Morris was suspicious that defendant was in fact a "sleepy driver," so he pulled out from his position on the median, entered the highway, and caught up with defendant, who by this time, was driving in the right lane. While driving behind defendant in the right lane, Trooper Morris observed the vehicle cross over the right shoulder line by about six inches. Trooper Morris immediately initiated a traffic stop for failure to maintain a single lane of traffic.

After stopping the vehicle, Trooper Morris approached the defendant's vehicle and explained why he had initiated the traffic stop. Defendant informed Trooper Morris that he did not speak English very well, but provided his Arizona drivers' license and the vehicle registration. Defendant told Trooper Morris that he was traveling from Phoenix, Arizona to Kansas City to visit his brother; he also stated that his mother was ill in Mexico. Trooper Morris observed that defendant was extremely nervous, his hands were shaking and he would not make eye contact. When Trooper Morris ran a check on the vehicle, he discovered that it had been registered to defendant only three days earlier on October 18, 2006.

Trooper Morris issued defendant a warning ticket, returned defendant's documents, and told him to "have a safe trip." Trooper Morris stepped away from the vehicle for a moment, took a short pause, and as defendant was beginning to leave, asked defendant in both English and Spanish if they could speak further and if he could search the vehicle. Defendant told Trooper Morris that he could search the vehicle, at which point Trooper Morris instructed defendant to

---

[1]Trooper Jimerson testified that he has had experience with many vehicle accidents involving sleepy drivers.

stand in front of the vehicle.  Trooper Jimerson then arrived to assist Trooper Morris with the search.[2]

Trooper Morris began searching the left side of the vehicle and Trooper Jimerson began searching the right side.  Soon after the search began, Trooper Morris alerted Trooper Jimerson that in the rear corner of the passenger side of the cab, he could see a slit that had been made in the wall; and he could see that the fabric panel covering it had slipped and was ajar.  Trooper Morris testified that based on his training and experience, it was immediately apparent to him, that this was an after-market concealed compartment.  Based on this observation, he pulled back the identical panel in the back corner of the driver's side and observed another compartment. He could see that inside the compartment was duct tape and plastic wrap—packaging materials commonly used to wrap illegal drugs.

Based on Trooper Morris's belief that the defendant's vehicle had a concealed compartment containing illegal substances, as well as for safety reasons, the troopers decided to get off the highway; so they ordered defendant to drive his vehicle to a police garage in Topeka for further searching.  The troopers both testified that defendant was not given a choice whether to follow them to the garage in Topeka; he drove his vehicle in between the two patrol cars for the 10–15 minute drive back to Topeka.

Once at the garage, the troopers continued to search and found large quantities of methamphetamine and crack cocaine in the compartments.  Before booking defendant, Trooper Jimerson downloaded information from defendant's cellular phone, which had been found inside

_____

[2]By the time Trooper Jimerson arrived, defendant was already standing in front of the vehicle.

the cab of the truck.[3]  Trooper Jimerson downloaded all sent and received telephone numbers, but did not download any of the contents of the phone calls.  Defendant was then arrested for possession of controlled substances.

## II.   Discussion

### A.      Motion to Suppress Evidence

Defendant moves to suppress on two grounds.[4]  First, defendant maintains that he was directed to follow the troopers to the garage and did not voluntarily do so.  Second, defendant argues that the troopers did not have probable cause to search the vehicle.  "'A traffic stop is a "seizure" within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief.'"[5]  The principles of *Terry v. Ohio*[6] apply to such traffic stops.  The reasonableness of a stop depends on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."[7]  Trooper Morris stopped defendant for failure to maintain a single lane of traffic after observing him cross the shoulder line multiple times.  Defendant does not contest the validity of the initial stop; instead, he argues that the troopers

---

[3]Trooper Jimerson testified that he "inventoried" the truck and downloaded the numbers in the phone's address book within one hour after they returned to the garage with defendant.

[4]The government also suggested at the evidentiary hearing that defendant may not have standing to challenge the search of the vehicle because it was likely purchased by a drug organization.  But the government introduced no evidence in support of this theory.  According to the troopers' testimony, the vehicle registration was in defendant's name.  Nonetheless, even if he lacked standing to challenge the search of the vehicle, he may "contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the [defendant's] illegal detention."  *United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001).

[5]*United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc) (quoting *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (further quotation omitted)).

[6]392 U.S. 1 (1968).

[7]*Id*. at 19–20.

improperly prolonged the detention and illegally searched his vehicle.

Even if the initial stop of defendant's vehicle was legitimate, the detention must be "reasonably related in scope to the circumstances which justified the interference in the first place," as required under *Terry*.[8]  "Generally, an investigative detention must last no longer than is necessary to effectuate the purpose of the stop."[9]  However, "an officer conducting a traffic stop may request vehicle registration and a driver's license, run a computer check, ask about travel plans and vehicle ownership, and issue a citation."[10]  Upon issuing a citation or warning and determining the validity of the driver's license and right to operate the vehicle, the officer usually must allow the driver to proceed without further delay.[11]

An officer may lengthen the detention for questioning or investigation unrelated to the reason for the initial stop if the detention has become consensual.  Absent consent, the officer may lengthen the detention where the officer has

> 'an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring' in order to justify detaining an individual for a period of time longer than that necessary to review a driver's license and vehicle registration, run a computer check, determine that the driver is authorized to operate the vehicle, and issue the detainee a citation.[12]

---

[8]*United States v. Williams*, 271 F.3d 1262, 1266 (10th Cir. 2001), *cert. denied*, 535 U.S. 1019 (2002); *United States v. Bustillos-Munoz*, 235 F.3d 505, 512 (10th Cir. 2000), *cert. denied*, 534 U.S. 854 (2001).

[9]*United States v. Cervine*, 347 F.3d 865, 870–71 (10th Cir. 2003) (internal quotation omitted); *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999).

[10]*United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001); *see Illinois v. Caballes*, 543 U.S. 405 (2005) ("[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.").

[11]*United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

[12]*United States  v. Salzano*, 158 F.3d 1107, 1111 (10th Cir. 1998) (quoting *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994)); *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998).

Officers may also question a vehicle's occupants about travel plans, their identities, and ownership of the vehicle without improperly expanding the length of detention.[13]  The content of the officers' questions during a stop does not implicate the Fourth Amendment so long as it does not prolong the detention.[14]  In this case, because the prolonged detention became consensual and was further based on Trooper Morris's reasonable suspicion of illegal activity, the prolonger detention was justified.

### 1. Consent

"Valid consent is consent which is freely and voluntarily given."[15]  Voluntariness of consent is a question of fact to be determined from all the circumstances; a court should neither presume that the consent was voluntary nor involuntary.[16]  The government bears the burden of proving that consent was voluntary under the totality of the circumstances.[17]  To satisfy this burden, the government must show that the consent was unequivocal and specific and freely and voluntarily given.[18]  Mere submission to lawful authority does not equate to valid consent.[19]  Language barriers are relevant in evaluating a defendant's ability to act knowingly, intelligently, and voluntarily.[20]

---

[13]*Cervine*, 347 F.3d at 871; *United States v. Zabalza*, 346 F.3d 1255, 1259 (10th Cir. 2003).

[14]*United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007) (construing *Muehler v. Mena*, 544 U.S. 93, 101 (2005)).

[15]*Patten*, 183 F.3d at 1194.

[16]*United States v. Hernandez*, 93 F.3d 1493, 1500 (10th Cir. 1996).

[17]*United States v. Gregoire*, 425 F.3d 872, 879 (10th Cir. 2005); *Patten*, 183 F.3d at 1194.

[18]*United States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998).

[19]*United States v. Manuel*, 992 F.2d 272, 275 (10th Cir. 1993).

[20]*United States v. Hernandez*, 893 F. Supp. 952, 961 (D. Kan. 1995), *aff'd*, 103 F.3d 145 (10th Cir. 1996).

After returning defendant's documents and issuing him a warning for failing to maintain a single traffic lane, Trooper Morris told defendant to "have a safe trip" and then took a step away from the vehicle. The Court, therefore, must determine "whether a reasonable person in [defendant's] position would believe he was not free to leave."[21] The Court finds that a reasonable person in defendant's position would have believed he was free to leave after Trooper Morris returned defendant's documents and wished him a "safe trip." The consent was obtained without undue duress or coercion. Trooper Morris was the only officer present when defendant consented to the search. There is no evidence that defendant exhibited discomfort during the search or expressed a desire to halt the search, nor is there any evidence that Trooper Morris showed any sign of force

Moreover, Trooper Morris asked for defendant's consent in both English and Spanish. Trooper Morris testified that defendant responded by telling him he could search the vehicle and there is no evidence he did not understand the request. While Trooper Morris never advised defendant that he had the right to refuse consent, the Tenth Circuit has "reject[ed] the suggestion that the trooper's failure to advise [defendant] that he was free to leave, or that he could refuse consent to search, render[s] the consent involuntary"[22] when the events occurring before the search were lawful. The Court determines that Trooper Morris lawfully obtained consent to search defendant's vehicle under the totality of the circumstances.

**2. Reasonable Suspicion**

Even if the Court found that defendant's consent was not knowing and voluntary,

---

[21]*United States v. Hernandez*, 93 F.3d 1493, 1499 (10th Cir. 1996).

[22]*United States v. Gregoire*, 425 F.3d 872, 880 (10th Cir. 2005).

Trooper  Morris had developed reasonable and articulable suspicion that illegal activities were taking place during the course of the traffic stop sufficient to justify the continued detention and search.  According to his testimony, several factors contributed to Trooper Morris's reasonable suspicion of illegal activity: (1) defendant was traveling on a well-known drug route between Phoenix and Kansas City and was resting his head on the headrest, suggesting he was tired from driving all night; (2) the vehicle was registered to defendant just three days prior to the traffic stop, which is common for drug organizations seeking to present the driver as a legitimate owner of the vehicle; (3) defendant's story about going to Kansas City despite his mother being ill in Mexico seemed inconsistent; and (4) defendant appeared more nervous that an ordinary citizen during a routine traffic stop—his hands were visibly shaking and he would not make eye contact. These factors provided reasonable suspicion that illegal activity was occurring and justified a prolonged detention of defendant, even in the absence of consent.

### 3.  Probable Cause

Defendant argues that the troopers lacked the probable cause necessary to require him to follow them to the garage in Topeka.  The government concedes that defendant was not free to leave at the point where the troopers requested him to follow them to Topeka.  "An officer has probable cause to arrest an individual when all of the facts and circumstances would lead a reasonable person to believe that an offense has been or is being committed."[23]  The Court must examine the facts as they would have appeared to a prudent, cautious, trained police officer.[24] "[A] warrantless search of an automobile is permitted only if 'there is probable cause to believe

---

[23]*United States v. Davis*, 87 Fed. App'x 94, 98 (10th Cir. 2004); *United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001).

[24]*United States v. Maher*, 919 F.2d 1482, 1485 (10th Cir. 1990).

that the vehicle contains contraband or other evidence which is subject to seizure under law.'"[25]

Trooper Morris testified that, based on his training and experience, the alterations in the cab of the truck were hidden compartments designed to transport drugs.  The alternations to the truck were clearly visible from Trooper Morris's location as were the plastic wrap and duct tape, which are common drug packaging materials.  "Evidence of a hidden compartment can contribute to a finding of probable cause to search."[26]  "Whether probable cause to search a vehicle can be based on evidence of a hidden compartment depends on two factors: (1) the probative value of the evidence—that is, the likelihood that there really is a hidden compartment; and (2) the likelihood that a vehicle with a hidden compartment would, in the circumstances, be secreting contraband."[27]  The second factor is "not a concern because if [a] vehicle ha[s] a hidden compartment, it [is] highly likely to contain contraband."[28]  Indeed, it is "hard to conceive of a legitimate use for a large hidden storage compartment in any vehicle."[29]  Furthermore, both troopers testified that in their experience, they typically find illegal substances in concealed compartments in vehicles.

Because there was sufficient evidence of a hidden compartment, Trooper Morris had probable cause to search the vehicle and the search was proper.  This evidence, when taken

---

[25]*United States v. Mercado*, 307 F.3d 1226, 1230 (10th Cir. 2002) (quoting *United States v. Ludwig*, 10 F.3d 1523, 1528 (10th Cir. 1993)).

[26]*United States v. Anderson*, 114 F.3d 1059, 1066 (10th Cir. 1997) (citing *United States v. Inocencio*, 40 F.3d 716, 724 (5th Cir. 1994) (holding that evidence of concealed compartment contributed to probable cause to search).

[27]*United States v. Ledesma*, 447 F.3d 1307, 1317 (10th Cir. 2006) (citing *United States v. Jurado-Vallejo*, 380 F.3d 1235, 1236 (10th Cir. 2004)).

[28]*Id.*

[29]*Id.*

together with other evidence such as defendant's unusual travel plans, his recent purchase of the

vehicle, his travel on a well-known drug route, his fatigue, and his extreme nervousness, gave

Trooper Morris probable cause to search the vehicle.  For these reasons, the Court denies

defendant's Motion to Suppress Evidence.

### B.        Motion to Suppress Evidence Seized from Cellular Phone

Defendant also seeks to suppress the information that Trooper Jimerson downloaded

from

his cellular phone under both the Fourth Amendment and the Electronic Communications

Privacy Act ("ECPA").  Given the Court's conclusion that defendant consented to the search of

his vehicle, it is clear that the cellular phone itself was lawfully seized during the search of his

vehicle.  Alternatively, the troopers' reasonable suspicion of illegal activity ripened into

probable cause when they discovered hidden compartments in the vehicle.  Therefore, the Court

need only determine if the phone numbers downloaded by Trooper Jimerson were validly

retrieved.

The government contends that there is no evidence that the phone belonged to defendant,

such that he had a reasonable expectation of privacy in it, and that the information was seized

incident to defendant's arrest.  Assuming that defendant had a reasonable expectation of privacy

in the numbers stored on the cellular phone,[30] the Court proceeds to determine if the cellular

phone was validly seized pursuant to a search incident to defendant's arrest.  "A warrantless

search incident to arrest is valid so long as: (1) there existed a legitimate basis for the arrest

---

[30]*See Katz v. United States*, 389 U.S. 347, 361 (1967) ("there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'")  (Harlan, J., concurring).

before the search; and (2) the arrest took place shortly after the search."[31]  A search may precede

an arrest and still be incident to an arrest.[32]  As already discussed, defendant was validly detained

based on probable cause that he was transporting drugs in his vehicle.[33]  Although the search

took place before defendant was booked, this fact alone does not negate the search as one

incident to arrest.   Defendant does not dispute that he was arrested shortly after the troopers

searched his truck.

Defendant argues that this case is similar to *United States v. Chadwick*,[34] which held that

the warrant requirement was not limited to the home, but also applied to a double-locked

footlocker that contained the defendant's personal effects.[35]  The Supreme Court explained how

a person's diminished privacy interest in an automobile does not apply to closed containers, as

containers are not open to public view nor subject to official inspections or scrutiny.[36]  The Court

further explained that the automobile exception does not apply to luggage because the inherent

mobility  rationale that applies to the automobile exception would not apply to a closed container

like the footlocker: "The initial seizure and detention of the footlocker . . . were sufficient to

guard against any risk that evidence might be lost.  With the footlocker safely immobilized, it

was unreasonable to undertake the additional and greater intrusion of a search without a

---

[31]*United States v. Lugo*, 170 F.3d 996, 1003 (10th Cir. 1999).

[32]*United States v. Torres-Castro*, 470 F.3d 992, 997 (10th Cir. 2006) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)).

[33]*See, e.g.*, *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998).

[34]433 U.S. 1 (1977).

[35]*Id.* at 12.

[36]*Id.* at 12–13.

warrant."[37]

The Supreme Court also explained that a search incident to arrest is only proper if there is some danger that the arrestee could use a weapon, or when evidence may be concealed or destroyed.[38]  Because the footlocker in *Chadwick* was within exclusive government control, there was no longer a danger that the arrestee might gain access to it to seize a weapon or to destroy evidence.[39]  Defendant argues that the cellular phone here is analogous to the footlocker in *Chadwick*.  But courts have long recognized the need to retrieve information from a pager, a much more analogous piece of property, in order to prevent its destruction as evidence.[40]  The Court finds that this case is not analogous to a closed container, such as the footlocker discussed in *Chadwick*, and denies the motion to suppress on this ground.[41]

Moreover, the act of downloading phone numbers from defendant's cellular phone does not implicate Title II of the ECPA, which encompasses the Stored Communications Act ("SCA"):

---

[37]*Id.* at 13.

[38]*Id.*

[39]*Id.*

[40]*See, e.g.*, *United States v. Ortiz*, 84 F.3d 977, 984 (7th Cir. 1996); *United States v. Frost*, 999 F.2d 737, 739 (3d Cir. 1993); *United States v. Meriwether*, 917 F.2d 955, 957 (6th Cir. 1990).

[41]*Accord United States v. Finley*, 477 F.3d 250, 260 (5th Cir. 2007).  Likewise, *United States v. Reyes* does not dictate suppression.  922 F. Supp. 818  (S.D.N.Y. 1996).  Defendant likens the seizure here to the seizure in that case of a pager from a storage room of the hotel where the defendant had been staying.  But that case dealt with the seizure of multiple pagers, and the phone numbers contained therein.  That court suppressed evidence from the pager discussed by this defendant because the officer took an additional step and turned the pager on.  Therefore, that court found that the exigent circumstances exception to the warrant requirement did not apply because the officer created the exigency.  *Id.* at 835–36.  More on point is, one of the other pagers at issue in *Reyes*, which  was seized pursuant to the defendant's general consent to search his vehicle, in the same manner that the cellular phone in this case was seized.  *See id.* at 833–34.  The court held that this general consent to search his vehicle included consent to search the memory of the pager.  *Id.* at 834.  That court, therefore, did not reach the issue of whether that pager was seized incident to arrest.  *See id.* at 834 n.14.

(a) Offense.—Except as provided in subsection (c) of this section whoever—

> (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
> (2) intentionally exceeds an authorization to access that facility;
>
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.[42]

Because defendant concedes that Trooper Jimerson *accessed*, rather than *intercepted* the communications at issue, a search warrant and not a court order would have been required.[43] "As a result, the same exceptions to the warrant requirement apply to this section as apply to any other warrantless search."[44]  Therefore, because the Court has already determined that downloading the phone numbers was a valid seizure incident to defendant's arrest, an exception to the warrant requirement, the seizure did not violate the SCA.  Moreover, the Court notes that there does not appear to be an independent exclusionary remedy for a violation of the SCA.[45] Evidence from defendant's cellular phone need not be suppressed under either the Fourth Amendment or the ECPA.

---

[42]18 U.S.C. § 2701(a).  The SCA is distinct from § 2511 of the ECPA which prohibits interception of a wire communication.  *See Steve Jackson Games, Inc. v. United States Secret Serv.*, 36 F.3d 457, 462 (5th Cir. 1994) (explaining that the main difference is that governmental access to stored electronic communications requires only a search warrant while interception of communications or access to stored wire communications requires compliance with the more rigorous requirements of § 2518); *United States v. Moriarty*, 962 F. Supp. 217, 221 (D. Mass. 1997) (comparing the two provisions for purposes of a double jeopardy analysis); *Bohach v. City of Reno*, 932 F. Supp 1232, 1235–36 (D. Nev. 1996) (explaining that sections 2701 through 2711 apply when an electronic communication has been put into electronic storage before it is accessed).

[43]*See Steve Jackson Games*, 36 F.3d at 462–63; *United States v. Reyes*, 922 F. Supp. 818, 837 (S.D.N.Y. 1996).

[44]*Reyes*, 922 F. Supp. at 837.

[45]*United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003) ("the SCA creates criminal and civil penalties, but no exclusionary remedy"); *see* §§  2701(b), 2707, 2708.

13

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Suppress Evidence Seized from Cellular Phone (Doc. 14) and Motion to Suppress Evidence (Doc. 15) are **denied**.

**IT IS SO ORDERED.**

Dated this 3rd day of April 2007, at Topeka, Kansas.

S/ Julie A. Robinson
Julie A. Robinson
United States District Judge